UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-12023-RWZ

UNITED STATES

v.

5 ANCHOR DRIVE, SANDWICH, MASSACHUSETTS

ORDER

February 1, 2011

ZOBEL, D.J.

The United States brings this civil forfeiture proceeding under 21 U.S.C. § 881 against the real property located at 5 Anchor Drive in Sandwich, Massachusetts. Police searched this suburban home and discovered a substantial number of marijuana plants. Tracy Harsh and Michael Baker, both of whom hold an ownership interest in the home, move to suppress all evidence discovered during the search. The motion is fully briefed and the court held a two-day evidentiary hearing.

I.  **Factual Findings**

At 12:25 a.m. on July 18, 2008, the Sandwich, Massachusetts Police Department ("SPD") dispatcher received a report that gun shots were fired at 5 Anchor Drive. Two SPD officers, Christa Cabral and David Dwyer, were dispatched to the scene. The dispatcher informed the officers that a woman, Tracy Harsh, was the listed resident and she possessed a firearm license.[1] The dispatcher made the first of many, unsuccessful

---

[1]Tracy Harsh was named Tracy Baker at the time these events transpired, but this order refers to her by her current name to avoid any confusion with the other

attempts to contact Harsh by telephone.  The dispatcher received a second report that gun shots were fired at 12:33 a.m., shortly before the officers reached the home.

The two officers arrived almost simultaneously sometime prior to 12:40 a.m. They parked their vehicles at the base of a long wooded driveway, approached the house on foot, knocked on the door, received no response, and circled the exterior of the home.  They observed that some interior lights were on, but they could not get a clear view into the home.  At approximately 12:40 a.m. the SPD sergeant on duty, Chris McDermott, and a Massachusetts state trooper, Thomas Fitzpatrick, arrived on site. The officers conferred and three of them continued to survey the exterior while Sergeant McDermott went to knock on a neighbor's front door.

At approximately 12:49 a.m. a vehicle pulled up to the base of the driveway and a man, later identified as Michael Baker, walked rapidly up the driveway to the officers. The officers ordered him to the ground and later placed him in handcuffs in the back of a police cruiser.  He told the officers that he lived in the home and that no one was inside.  His drivers license listed a Falmouth, Massachusetts, residence.

Baker explained that earlier in the evening a woman knocked on his door and told him that her car had broken down near the bottom of his driveway.  He gave her his cell phone to call for assistance.  She walked down the driveway then returned with another woman.  Baker said he would drive down to look at her car, so he climbed into his own vehicle and pulled out of the garage.  As he left the garage he saw a man waving a gun near the front door of the home so he sped off to secure the aid of friends

---

interested party, Michael Baker.

2

in Falmouth, about a 30-minute, round-trip drive from Sandwich. Baker told this story several times to the officers, and he gave varying descriptions of the race and appearance of the two women. The timing of his story, with the drive to and from Falmouth, placed the events he described earlier in the evening than the two reports of gunfire.

The police asked Michael Baker about Harsh. He said that they had just divorced and she moved out earlier in the day. The officers also asked to use his cell phone to trace any number the woman who knocked on his door might have called, but he stated that the phone was "off" so the woman could not have called anyone.

While the officers were speaking with Baker, another man, later identified as David Brasil, walked up the driveway. He was secured and placed in another police cruiser. Trooper Fitzpatrick walked down the driveway and found Baker's vehicle with a man, Thomas Tully, in the passenger seat. Tully disclosed that he had two firearms in the vehicle.

After discussion with the officers present, Sergeant McDermott made the decision at 1:04 a.m. to enter the home and check that no one inside was injured. The sergeant told Baker who handed over his keys. McDermott, Dwyer, and Fitzpatrick entered the home and began their search on the top floor, looking in any space in which a person might be found.

The officers reached the basement at approximately 1:24 a.m. Officer Dwyer discovered a walled-off area, with the walls constructed of plywood. Two doors were cut into the plywood, each secured with a padlock on the outside, in such a manner as

3

would prevent anyone on the inside from leaving.  The officers were able to remove the locks from the doors.  They discovered that the two doors opened into separate rooms that were connected with each other and with the outside of the home by a system of ventilation tunnels with fans.  Each room contained marijuana plants.

## II.     Conclusions of Law

"The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search."  Murray v. U.S., 487 U.S. 533, 536 (1988) (internal citations omitted).  The Fourth Amendment prohibits unreasonable searches, and a warrantless search of an individual's home is presumptively unreasonable unless it falls within one of a few recognized exceptions.  U.S. v. Martins, 413 F.3d 139, 146 (1st Cir. 2005).  One such exception is the existence of exigent circumstances, circumstances that present an objectively compelling reason for immediate action without waiting to obtain a warrant.  Id.  An example, relevant to this case, is that "the police, in an emergency situation, may enter a residence without a warrant if they reasonably believe that swift action is required to safeguard life or prevent serious harm."  Id. at 147.

In this case, the circumstances demanded immediate action that rendered reasonable the warrantless search of the house at 5 Anchor Drive.  The police had received two reports of gunshots and they learned that the owner of the house, Tracy Harsh, held a firearm license.  Despite diligent efforts, they were unable to contact her.  Then Baker, who claimed to be the owner and sole occupant, arrived with two friends and told a suspect story about an earlier appearance of two women in need of a

4

telephone and a man waving a gun. He also gave an unlikely explanation as to Harsh's whereabouts which raised the possibility of a serious domestic dispute. Finally, one of the friends admitted to having two guns in his truck. Given this scenario, Sergeant Dwyer was fully justified in entering the house to ascertain that no one had been shot and lay injured inside the home. The officers acted promptly, after appropriate deliberation, when they entered the home minutes after their alarming interaction with Baker and his two friends. Their search of all areas of the home in which a person might be
located, including the two plywood rooms, was appropriate in scope.

### III. Conclusion

The motion to suppress (Docket # 34) is DENIED.


    February 1, 2011                          /s/Rya W. Zobel
        DATE                                        RYA W. ZOBEL
                                                      UNITED STATES DISTRICT JUDGE